## APPEAL OF EDWARD R. BACON GRAIN CO.

Docket No. 2565.   Submitted May 20, 1925.   Decided September 9, 1925.

> Where the taxpayer kept its accounts on a cash receipts and disbursements basis and sustained a cash loss in 1920, resulting from trading in grain futures, *held*, that the 1920 loss in that transaction can not be carried over into 1921 as an offset to a gain resulting from a separate and distinct cash grain sale which was completed in 1921, even though the buyer in that transaction might have elected performance in 1920.

*B. B. Pettus* and *Edwin E. Cassels, Esqs.*, for the taxpayer.
*B. G. Simpich, Esq.*, for the Commissioner.

### Before IVINS, MARQUETTE, and MORRIS.

This appeal is from the determination by the Commissioner of a deficiency in income and profits taxes for the year 1921 in the amount of $27,722.39.

The taxpayer claims that the 1921 income should be reduced by the amount of $80,272.37, which was carried over from 1920 as a hedging loss against 1920 contracts to be performed in 1920 or in 1921 at the buyer's option.

### FINDINGS OF FACT.

The taxpayer is an Illinois corporation having its principal place of business in Chicago. It made its tax returns upon a cash receipts and disbursements basis. During 1920 and 1921 it was engaged in the "cash grain" business. It bought and sold "futures" as an incident of that business. At the end of August, 1920, the taxpayer had open cash sales for future delivery totaling 698,000 bushels, including 390,000 bushels of "cash oats," at prices fixed on Boston delivery to eastern customers for delivery in December, 1920, or in such month thereafter as the buyers might elect. At the end of 1920 it had 326,000 bushels undelivered for eastern customers.

On August 30, 1920, the taxpayer purchased on the Chicago Board of Trade, through E. W. Bailey & Co. (a Chicago commission house), subject to the rules of said Board, "December futures" in oats to the amount of 330,000 bushels as a "hedge" against the taxpayer's liability on its contracts of sale of "cash oats" outstanding on August 30, 1920, for December delivery.

The rules of the Chicago Board of Trade required that transactions in December "futures" be closed out on or before December 31, 1920, and the transactions of the taxpayer in "futures" were so closed out by the sale of the 330,000 bushels on November 20 and 22, at a price $80,272.37 below their purchase price. The taxpayer closed out the hedge at that time because the market was falling and a further lowering in prices was expected. No additional futures were bought by the taxpayer during 1920.

The difference of $80,272.37 was charged on the taxpayer's books against the cash grain December contracts as an expense of those contracts and was not considered by the taxpayer as an independent transaction. The amount was not treated as an established or determined loss for 1920, but was carried as a suspense item upon the taxpayer's books.

The buyers of the "cash grain," pursuant to their contracts, elected not to receive the "cash grain" in December, 1920, but to receive it instead during 1921. The election was communicated to the taxpayer in December, 1920, and delivery of the grain was actually made during eight months of 1921 and the contract price then paid. The $80,272.37 difference on the "futures" was charged off by the taxpayer in 1921 against such "cash" contract price, together with the expense incidental to carrying such contracts,

obtaining the actual grain for delivery, and completing delivery. The net thereby resulting was reported in the taxpayer's return as an actual profit realized in 1921, as a single unit of business, and as the proceeds of a then completed transaction. The taxpayer's balance sheet as of December 31, 1920, showed the item of $80,272.37 as "advanced on oats not delivered."

. The practice of hedging is employed by cash grain houses generally to eliminate speculation in cash grain transactions.

The Commissioner disallowed the reduction in 1921 income by the amount carried over from 1920 transactions and determined a deficiency in taxes for 1921 of $27,722.39. From that determination the taxpayer duly appealed.

### DECISION.

The determination of the Commissioner is approved.

### OPINION.

Ivins: The taxpayer kept its accounts and rendered its return for 1921 on a cash receipts and disbursements basis. It sustained a cash loss of $80,272.37 in 1920, which resulted from a 1920 cash disbursement. The deduction of that amount from 1921 income could only be permitted as an accrued liability chargeable against that year's income. The use of the cash basis precludes such treatment of the matter.

At the time the hedge was finally closed out, on November 22, 1920, it could not be said that the taxpayer thereby made any capital investment. In August it bought futures at one price. In November it sold them at a lower price. The hedge was but a temporary insurance and that only during the existence of a rising market. The taxpayer closed out the hedge only because it expected the market to go still lower between November 22 and December 31. It was obliged by the rules of the Chicago Board of Trade to close out futures by December 31, and it did so by November 22 to save itself from further loss of cash in 1920 due to the constantly falling market.

In our opinion the contracts for sale of cash grain in December or later months, and the loss sustained on November 22 from the dealings in futures, were distinct and separate transactions. The contract for December cash grain was an agreement *to* sell in December, 1920, or in later months of 1921, at the buyer's election. If the taxpayer had been keeping its accounts upon an accrual basis, the contract would not have been the foundation for an accrual of income until something was due, and such could be determined only when the buyer elected to make it due. By November 22 it became certain to the taxpayer that that event would not occur during 1920 and it

then took its loss to prevent what would have been a greater loss if it had delayed closing the transaction until later.

The 1920 loss resulted from expense incurred in anticipation of a possible 1920 liability. No liability actually arose in 1920. The sales in 1921 were separate transactions, entirely distinct and apart from the 1920 cash loss.

TRUSSELL dissenting.
ARUNDELL not participating.